Joe Louis THEUS, Appellant,

v.

The STATE of Texas, Appellee.

Nos. C14–90–00717–CR, C14–90–00720–CR.

Court of Appeals of Texas,
Houston (14th Dist.).

Feb. 24, 1994.

Rehearing Overruled April 7, 1994.

DeEdward J. Greer, Houston, for appellant.

Linda A. West, Houston, for appellee.

Before ROBERTSON, SEARS and DRAUGHN, JJ.

## OPINION ON SECOND REMAND

ROBERTSON, Justice.

Appellant was indicted for possession and delivery of less than twenty-eight grams of cocaine, and was found guilty on both counts by a jury. The trial court assessed punishment at thirty-five years imprisonment for possession of the controlled substance and twenty-five years for its delivery. On original submission, the majority of this court rejected appellant's arguments that the trial court improperly admitted evidence of a prior conviction, and we affirmed the judgment of the trial court. *Theus v. State*, 816 S.W.2d 773 (Tex.App.—Houston [14th Dist.] 1991). Appellant filed petition for discretionary review and the court of criminal appeals reversed and remanded this cause to this court to determine whether appellant was harmed

by the improper admission of a prior conviction. *Theus v. State*, 845 S.W.2d 874, 882 (Tex.Crim.App.1992). We concluded the error was harmless beyond a reasonable doubt and affirmed the judgment of the trial court. Appellant again filed petition for discretionary review and the court of criminal appeals again remanded, holding that when a case is remanded to a court of appeals, "the return of the record to the court of appeals [is] equivalent to the filing of the statement of facts, giving counsel thirty days in which to file a brief on appellant's behalf." 863 S.W.2d 489. The court of criminal appeals further held that when no brief has been filed, "the Court of Appeals [is] obligated to inquire as to the reason for that omission." This is so, says the court of criminal appeals, even though the record shows appellant is represented by counsel. Following this latest remand, appellant did file a brief and the case, still in the appellate orbit, is once again before us for the third time.

Appellant complains of the trial court allowing the state to bring forward testimony regarding his prior conviction for arson. The state questioned appellant about this prior conviction in an attempt to impeach his credibility. The state also questioned appellant's witnesses concerning their knowledge of his prior conviction. Prior to trial, appellant filed a motion asking the trial court to not allow testimony regarding this conviction because the unique facts surrounding the conviction were more prejudicial than probative and the conviction had no bearing on truth or veracity. After a hearing, the trial court denied this motion.

The court of criminal appeals did not find that this prior conviction was per se inadmissible. *Theus*, 845 S.W.2d at 879. The court stated that Rule 609 of the Texas Rules of Criminal Evidence provide that a felony conviction *shall* be admissible for impeachment purposes once the trial court decides the probative value of the conviction outweighs its prejudicial effect. *Id.* The court then considered five factors to determine that appellant's arson conviction had very little probative value concerning his credibility. *Id.* at 881. The court looked at (1) the impeachment value of the prior crime; (2) the temporal proximity of the past crime relative to the charged offense and the witness' subsequent history; (3) the similarity between the past crime and the offense being prosecuted; (4) the importance of the defendant's testimony; and (5) the importance of the credibility issue.

The court found that four of the factors favored admissibility. The conviction would not cause the jury to perceive appellant as a drug dealer because the two crimes were not similar; it occurred recently relative to the charged offense; appellant's testimony and credibility were important, as the defense presented was mistaken identity, and the trial pitted the testimony of the officers against that of appellant and his character witnesses. *Id.* However, the court found the unique circumstances of this case compelled a finding that the lack of impeachment value overrode the other four factors. *Id.*

The court stated the arson conviction had so little probative value on the question of appellant's credibility and had much prejudicial effect, and the trial judge failed to dispel the prejudicial effect when presented with the opportunity.[1] *Id.* 881–82. It is in this

---

1. Appellant asked for the opportunity to explain to the jury the circumstances behind his arson conviction. Appellant feared that the mention of an arson conviction would conjure up images of burning buildings and insurance fraud. The trial court denied his request to explain the underlying facts.

The court of criminal appeals agrees with appellant that the trial court's denial of this request increased the prejudicial effect against him. *Theus*, 845 S.W.2d at 882. Both appellant and the court of criminal appeals seem to believe that images of burning buildings and insurance fraud are worse than the true facts behind his convic-

tion. It is beyond this court's comprehension how the facts would have served appellant.

Appellant, after a domestic dispute with his girlfriend, took a beer can full of gasoline and poured it through the postal slot of her door. He then set fire to the postal slot. The fire did not spread and was put out before much damage occurred to the residence. Appellant was not ordered to pay restitution and was placed on probation, which was later revoked.

Appellant and the court of criminal appeals seem to think that this was a minor crime. However, the only reason more damage did not occur was because the fire was quickly extinguished. How could appellant been helped by showing that he

posture that the case was remanded back to this court to conduct a harm analysis pursuant to Rule 81(b)(2) of the Texas Rules of Appellate Procedure.

■ In applying the harmless error rule, our focus is not on the propriety of the outcome of the trial, but on the integrity of the process leading to the conviction. *Harris v. State*, 790 S.W.2d 568, 584–87 (Tex. Crim.App.1989); Tex.R.App.P. 81(b)(2). Consequently, we must examine the source of the error, the nature of the error, whether or to what extent it was emphasized by the state and its collateral implications. *Id.* at 587. In addition, we must consider how much weight a juror would probably place upon the error and whether declaring the error harmless would encourage the state to repeat it with impunity. *Id.* If the error is of a magnitude that it disrupted the jury's orderly evaluation of the evidence, no matter how overwhelming such evidence might have been, then the conviction is tainted. *Id.* at 588. It is the effect of the error and not the other evidence that must dictate the reviewing court's judgment. *Id.*

■ In looking at the source and nature of the error, this court must determine whether the state intended to taint the trial in offering inadmissible evidence. *Higginbotham v. State*, 807 S.W.2d 732, 735 (Tex.Crim.App.1991); *Harris*, 790 S.W.2d at 588. The record before us does not support a finding that the state intended to taint the proceedings. The prosecutor argued a fair reading of the admissibility of prior convictions pursuant to Rule 609. At the time this case was tried there had been no case interpreting Tex.R.Crim.Evid.Ann. 609(a)—it was interpreted for the first time in this case. The rule was that prior felony convictions, not too remote in time, were admissible to impeach the testimony of an accused or a witness. Even Rule 609(a) authorizes the admission of such prior convictions, if the "court determines that the probative value of admitting this evidence outweighs its prejudicial effect to a party." Obviously the trial

judge so determined or he would not have admitted the evidence. The court of criminal appeals opinion stated that even though four factors weighed in favor of admissibility of this conviction, it was the unique facts of the case that compelled a finding that it was improperly admitted. *Theus*, 845 S.W.2d at 881. There simply is no basis for a finding that the prosecutor had any intent to taint the trial process by impeaching appellant with his prior conviction.

■ We must next look to see if the improper evidence was emphasized by the state. Again we do not find this factor weighs in favor of a finding of harm. In two hundred sixty-six pages of testimony, the questioning regarding this offense would not fill six pages. In nine and one half pages of cross-examination of appellant, just one and one half discussed the prior conviction. This could have been confined to less than one page but appellant stated he wasn't convicted and explained that he had been put on probation. The state then inquired about the success of his probation. Of appellant's five witnesses, four were asked about the prior conviction only after a thorough cross-examination about the facts of the charged offense or after establishing that the witness had no knowledge about the charged offense.

During nineteen pages of closing argument, the prosecutor referred to appellant's prior conviction or called him an ex-convict just three times. While the prosecutor did imply the prior conviction of appellant weakened his credibility, it was not the main focus of the argument. The prosecutor focused on the reliability of the officers who made the buy and testified at trial. The prosecutor spent a great deal of time discrediting the only witness who was at the scene of the sale. A great majority of the remaining argument focused on the police and the credibility of their testimony. The prosecutor spent close to six pages rebutting the argument of defense counsel regarding the officers use of an offense report and the fact that they were mistaken in arresting appellant. In his post-

---

attempted to burn down the residence of his girlfriend with the great possibility that she could have died in the resulting fire? A clearer reading of the facts that appellant so desperately wanted

to place before the jury might have led them to believe that he was lucky that he was not previously charged with murder or attempted murder.

remand brief appellant argues this court's opinion is in conflict with *Houghton v. State,* 816 S.W.2d 803 (Tex.App.—Houston [14th Dist.] 1991, no pet.). We disagree because the cases are so easily distinguished on the facts. In *Houghton* we held that the erroneous admission of a videotape of a young child's testimony to the police officers was not harmless because it "was the only evidence that would corroborate the complainant's ... testimony [which had changed from the morning to the afternoon session of court] regarding the sexual contact or penetration as charged in the indictment." This is a far cry from the facts of this case where the evidence of a prior felony conviction was used to impeach, if it did, the testimony of the accused, which testimony was already suspect.

■ We next focus on the probable collateral implications of the error. This factor contemplates the disparaging of a sole defense. *Higginbotham,* 807 S.W.2d at 732; *Harris,* 790 S.W.2d at 585. Appellant's defense was a claim of mistaken identity. The introduction of the prior conviction did not malign this defense. While it may have affected his credibility, the trial, with or without the prior conviction, would still focus on his word and the testimony of his witnesses against the testimony of the state's witnesses. Of appellant's five witnesses, only one, Frederick Clark, was actually in the building where the sale took place. Clark, who was also arrested at the scene, testified that he did not see appellant sell drugs to the officer. However, the officer who made the purchase testified that he later saw Clark at the station but did not recognize him because he had no dealings with him. Appellant introduced no evidence that would indicate Clark saw the buy that involved the officer.

Two other witnesses brought by appellant were near the scene but not in the vicinity when the buy took place. One was in a liquor store and the other arrived after the bust. Appellant's two remaining witness were strictly character witnesses and their testimony did not directly bolster his defense of mistaken identity. Appellant testified that he did not sell the drugs but the officer who made the buy testified that he positively identified appellant at the scene six minutes after the buy and again that evening at the station. The evidence did not support appellant's claim of mistaken identity but not because of the introduction of his prior conviction.

■ In his post-remand brief seizes upon our statement that the introduction of the prior conviction "may have affected his credibility" as proof positive that he was harmed. From this he concludes that reversal of his conviction, is required. The state's response to appellant's contention is so appropriately stated, it is adopted as our reasoning and is quoted in toto:

The test of TEX.R.APP.P.ANN. 81(b)(2) (Vernon Pamph.1993), however, is not whether there was "some harm" or "any harm" to a defendant. It is whether the error contributed to the conviction or to the punishment. Virtually every word of testimony and every bit of evidence introduced by the State in a criminal trial can be said to do "some harm" to the accused if by harm is meant that it in some way shows that he is guilty of a crime or that he has a criminal history. If the test for reversal when the State is the source of trial error were whether the error harmed the defendant in some way, then reversal would be automatic in all such cases. Such a rule would be tantamount to conferring upon every criminal defendant the right to a trial absolutely and perfectly free of any errors committed by the State.

Gratefully, such is not the rule. The possibility that the prior conviction affected the appellant's credibility does not foreclose the issue of whether the error contributed to the jury's finding of guilt. As this Court observed, the evidence did not support the appellant's claim of mistaken identity even without the introduction of the arson conviction. *Theus III* [858 S.W.2d], at 28.

■ We must next examine the record to try and determine the probable weight placed on the error by the jury. *Higginbotham,* 807 S.W.2d at 737; *Harris,* 790 S.W.2d at 587. The record shows that the improper evidence was discussed in only six of two hundred sixty-six pages of testimo-

ny. The state did not place added emphasis on the prior conviction during closing argument. While the impact of the conviction affected the credibility of appellant and his witnesses, the state's case-in-chief and its primary focus during argument was on the testimony of the officers and the credibility of that testimony. There is nothing to indicate the jury would place a greater emphasis on appellant's prior conviction to reach a finding of guilt. We can make a determination of this factor by looking at the dissipating effect of other evidence on the issue for which the jury would have considered the erroneously admitted testimony. *Montgomery v. State*, 821 S.W.2d 314, 325 (Tex.App.— Dallas 1991, pet. ref'd). As discussed above, four of appellant's five witnesses could offer no direct testimony regarding the sale of cocaine to the officer. The remaining witness's credibility was properly impeached with his own prior convictions. Additionally, his testimony did not include any information about who actually made the sale. He said he did not see appellant make a sale but he did not even acknowledge that he saw the sale take place, and if he did, who he saw make the sale.

■ Appellant testified that he did not sell the cocaine to the officer. Houston Police Officer Bledsoe testified that he personally purchased a rock of cocaine from appellant who was arrested by other officers within about six minutes, and that he then drove by the arrest location and verified the correct person had been arrested. Two members of the arrest team, Houston Police Officers McWilliams and Holmes (Holmes being a supervisor for some six and one-half years) testified that when they arrived to arrest appellant, appellant threw down a matchbox and a pill bottle, both of which contained rocks of cocaine (that was the basis for the possession charge and conviction). Appellant's credibility, while not indirectly challenged without the prior conviction, would surely be under scrutiny by any jury for possible self-serving statements. Also, the court of criminal appeals recognized that the differences between the two offenses would not lead the jury to perceive the appellant as a habitual drug dealer. *Theus*, 845 S.W.2d at 881. Like the admission of the extraneous offense evidence in *Harris* "the probable impact of the error on the jury was minimal."

■ Finally, we must determine whether declaring the error harmless would encourage the state to repeat it with impunity. *Higginbotham*, 807 S.W.2d at 737–38; *Harris*, 790 S.W.2d at 587. The court of criminal appeals held that admission of this prior conviction was improper because of the unique facts of the case. *Theus*, 845 S.W.2d at 874. Because of this, we do not believe that a harmless error finding in this case will lead the state to repeat this error with impunity. We further believe that the court's adoption of the five factors derived from federal case law will give prosecutors an insight into the analysis used by the court of criminal appeals before seeking admission of prior convictions.

■ Employing the considerations set out in *Higginbotham* and *Harris*, we conclude beyond a reasonable doubt, the state's use of appellant's prior conviction did not contribute to the jury's verdict of guilt. We therefore hold that the error is harmless as to the jury's determination of appellant's guilt. *See* Tex.R.App.P. 81(b)(2).

■ In appellant's post-remand brief he raises a second question—whether the error in admitting evidence of the prior arson conviction was harmless as to punishment. He admits in his brief that "certain matters in the record ... previously [had] not [been] briefed in any court." Appellant should be foreclosed from raising this issue at this late date, but in an effort to head-off yet another possible remand by the court of criminal appeals, we will address the issue.

The bottom line of appellant's contention is that Judge Boyd, who presided at appellant's trial and assessed punishment, was not aware of the underlying circumstances of the arson conviction because this evidence had been previously heard by Judge Walker during the hearing on appellant's pre-trial motion to prohibit the state from impeaching him with the prior arson conviction.

Appellant argues that the sentencing judge "*could* have considered the mitigating evidence of the prior arson conviction, but he

didn't *have* to." (emphasis appellant's) He then reasons that "since he (the sentencing judge) chose not to, this fact now makes it impossible for a reviewing court to be able to hold beyond a reasonable doubt that the complained of error made *no contribution to punishment.* (emphasis appellant's) We do not follow appellant's reasoning. The arson conviction was admissible at the punishment phase—it was alleged in the indictment as a prior conviction. Appellant pled "true" to the enhancement paragraph and stated he had no objection to the admissibility of the records concerning the prior conviction. While details of a prior conviction are generally not admissible, *Driehs v. State,* 301 S.W.2d 123 (Tex.Crim.App.1957), appellant did not even attempt to make the sentencing judge aware of what he contends to be *mitigating* facts surrounding the arson offense and conviction. Appellant was sworn and testified as a witness, but his attorney did not ask him any questions concerning "the mitigating facts" of the arson conviction. Further, in addition to the arson conviction, the state introduced evidence and appellant stipulated that following the arson conviction in 1983, he had been convicted of the offenses of assault and escape in 1985, and the offenses of driving while intoxicated in 1987. Additionally it was proven he had been convicted on another driving while intoxicated charge in 1979. We simply do not find a factual basis for appellant's complaint and find, beyond a reasonable doubt, that impeaching appellant with his prior arson conviction made no contribution to punishment.

The judgment of the trial court is affirmed.

SEARS, Justice, dissenting.

I again dissent for all the reasons enumerated in the original dissent and the dissent from the majority opinion in the first remand.

I agree with the reasoning of the Court of Criminal Appeals and I find harm beyond a reasonable doubt.